# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TONY MOORE, Individually and On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) | **CIVIL ACTION NO. 10-cv-5263** |
| ) | |
| vs. ) | |
| ) | |
| ) | CLASS ACTION COMPLAINT |
| CHINA NORTH EAST PETROLEUM HOLDINGS LIMITED, WANG HONG JUN, ZHANG YANG DIO and JU GUIZHI, ) ) ) | |
| ) | **JURY TRIAL DEMANDED** |
| Defendants. ) ) ) | |

Plaintiff, Tony Moore ("Plaintiff"), alleges the following based upon the investigation of Plaintiff's counsel, which included, among other things, a review of defendants' public documents, conference calls and announcements, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding China North East Petroleum Holdings Limited ("China North" or the "Company") and securities analysts' reports and advisories about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1.    This is a federal class action on behalf of purchasers of the securities of China North, who purchased or otherwise acquired China North securities between August 14, 2009 and May 26, 2010, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     China North is an independent, non-state-owned oil production company that engages in oil drilling project management including the exploration and the extraction of crude oil in proven oilfields in Northern China.  As of December 31, 2008, the Company operated 247 producing wells located in four oilfields in Northern China.

3.     On February 23, 2010, China North shocked investors when it announced that it would be revising its previously issued financial statements for 2008 and 2009 because of certain "non-cash accounting adjustments."  Upon the release of this news, shares of the Company's stock declined $0.69 per share, or 7.36 percent, to close on February 24, 2010 at $8.68 per share, on unusually heavy trading volume.

4.     On April 15, 2010, China North announced that it would be delaying the filing of its annual report for fiscal year 2009 and that it would be postponing the release date for its 2009 financial results.  On this news the Company's stock fell $0.75 per share, or 7.61 percent, to close on April 15, 2010 at $9.10 per share.

5.     The following day, on April 16, 2010, China North disclosed that it had discovered additional accounting issues and that it had received notice that it was not in compliance with the continuing listing criteria of NYSE Amex Equities Exchange ("AMEX"). On this news, the Company's stock fell an additional $0.39 per share, or 4.29 percent, to close on April 16, 2010 at $8.71 per share.

6.     On May 27, 2010, China North issued a press release disclosing that in 2009, a Company officer and a Company director had engineered significant improper cash transfers between bank accounts of the Company and their personal accounts.  The Company also disclosed that its Chief Executive Officer ("CEO") was placed on administrative leave and that he had stepped down as Chairman of the Board, both pending the outcome of the Company's

forensic audit. In addition, the Company announced that its Chief Financial Officer ("CFO") and a director had resigned.

7.    As a result of these adverse events, China North's stock has been halted and investors have suffered significant losses. When the Company's shares ceased trading on May 26, 2010, the closing price was $5.50 per share. As of the date that this Complaint was filed, the Company's shares have not resumed trading.

8.    The Complaint alleges that, throughout the Class Period, the Company issued materially false and misleading statements and omitted material facts that rendered their affirmative statements misleading as they related to the Company's financial performance, business prospects and financial condition. Specifically, defendants failed to disclose or indicated the following: (1) that a Company officer and a Company director engineered significant improper cash transfers between the Company's bank accounts and their personal accounts; (2) that the Company's financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (3) that the Company lacked adequate internal and financial controls; and (4) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

9.    As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class Members suffered damages.

## JURISDICTION AND VENUE

10.    The claims asserted herein arise under and pursuant Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

12.     Venue is proper in this District pursuant to pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).  Many of the acts and transactions alleged herein occurred in substantial part in this District.  Moreover, China North's principal executive offices are located within this District.

13.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce.

## PARTIES

14.     Plaintiff, Tony Moore, as set forth in the accompanying certification, incorporated by reference herein, purchased China North securities at artificially inflated prices during the Class Period and has been damaged thereby.

15.     Defendant China North is a Nevada corporation with its principal executive offices located at 445 Park Avenue, 10th Floor, New York, New York.

16.     Defendant Wang Hong Jun ("Wang") was, at all relevant times, the Company's President, CEO, and Chairman of the Board of Directors.

17.     Defendant Zhang Yang Dio ("Zhang") was, at all relevant times, the Company's CFO.

18.     Defendant Ju Guizhi ("Ju") was, at all relevant times, a member of the Company's Board of Directors.

19.     Defendants Wang, Zhang, and Ju are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of China North's reports to

the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

20.     China North is an independent, non-state-owned oil production company that engages in oil drilling project management including the exploration and the extraction of crude oil in proven oilfields in Northern China. As of December 31, 2008, the Company operated 247 producing wells located in four oilfields in Northern China.

### Materially False and Misleading Statements Issued During the Class Period

21.     The Class Period begins on August 14, 2009. On that date, the Company filed its Quarterly Report with the SEC on Form 10-Q for the 2009 second quarter (ended June 30, 2009). The Company's Form 10-Q was signed by Defendants Wang and Zhang, and contained Sarbanes-Oxley required certifications, signed by Defendants Wang and Zhang, who stated:

> 1. I have reviewed this report on Form 10-Q of China North East Petroleum Holdings Limited.;

2. Based on my knowledge, this annual report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this annual report;

3. Based on my knowledge, the financial statements, and other financial information included in this annual report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this annual report;

4. The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

    a. Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b. Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c. Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d. Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officers and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent functions):

    a) all deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to

adversely affect the registrant's ability to record, process, summarize and report financial information; and

b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

22.    On September 16, 2009, China North filed a Form 8-K with the SEC disclosing that it had entered into definitive agreements to sell 4 million shares of its common stock at a price of $4.60 per share, pursuant to a registered direct offering to several select institutional investors, as a result of which, the Company would receive gross proceeds of approximately $18.4 million.    The Company subsequently announced the closing of the transaction on September 21, 2009.

23.    On November 16, 2009, China North filed its Quarterly Report with the SEC on Form 10-Q for the 2009 third quarter (ended September 30, 2009).  The Company's Form 10-Q was signed by Defendants Wang and Zhang and contained Sarbanes-Oxley required certifications, substantially similar to the certifications contained in ¶ 21, *supra*.

24.    On December 14, 2009, the Company announced that it had entered into definitive agreements to sell over 1.9 million shares of its common stock pursuant to a registered direct offering to several select institutional investors, as a result of which, the Company would receive gross proceeds of $13.5 million.

25.    The statements contained in ¶¶ 21 and 23 were materially false and misleading when made because defendants failed to disclose or indicate the following: (1) that a Company officer and a Company director had engineered significant improper cash transfers between the Company's bank accounts and their personal accounts; (2) that the Company's financial statements were not prepared in accordance with GAAP; (3) that the Company lacked adequate internal and financial controls; and (4) that, as a result of the foregoing, the Company's financial

statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

26.    On February 23, 2010, the Company issued a press release entitled "China North East Petroleum Announces Revisions to Previously Issued Financial Statements for 2008 and 2009 Due to Non-Cash Accounting Adjustments."   Therein, the Company stated, in relevant part:

> China North East Petroleum Holdings Ltd. (the "Company" or "NEP") (NYSE Amex: NEP), a leading independent oil producing and oilfield services company in Northern China, ***today announced that as a result of the preparation of responses to comments the Company received from the Securities and Exchange Commission (the "SEC") in connection with the SEC's review of the Company's Form 10-K for the year ended December 31, 2008, the Board of Directors of the Company determined that the Company's financial statements for the year ended December 31, 2008, and each interim quarter within that year, and for the quarters ended March 31, 2009, June 30, 2009 and September 30, 2009 should no longer be relied upon as a result of certain non-cash errors contained therein*** regarding the accounting for: (i) warrants issued in conjunction with certain financings in 2008 and 2009, which warrants should have been classified according to EITF-0019 as liability instruments rather than equity instruments; (ii) interest expense calculated using the effective interest method that should have been recorded in each of the reporting periods in question, arising from those certain financings in 2008 and 2009; (iii) changes in the fair value of the reclassified warrants; (iv) ceiling test impairment calculations prepared by the Company for the reporting periods ended December 31, 2008 and March 31, 2009; (v) depreciation, depletion and amortization expenses related to the company's oil and gas properties, net; (vi) recognition of employee stock-based compensation expense; and (vii) a modification of the February 28, 2008 secured debenture that occurred on March 5, 2009, which modification should have been treated as an extinguishment pursuant to EITF 96-19.
>
> The Company is currently evaluating the cumulative impacts of these non-cash charges to the financial statements for the reporting periods in question, and will issue further disclosure detailing the impact and the net result of these changes to the financial statements as soon as possible. The Company is preparing amended reports for the December 31, 2008 Form 10-K and 2008 and 2009 Forms 10-Q in question, including restated financial statements, and will file those amended reports with the SEC when they are completed. As all of the errors noted herein are non-cash charges, the Company will not report any change to its previously disclosed revenues, cash balances or liquidity and capital resources disclosures.

The audit committee of the Company's board of directors has discussed the forgoing matters with the Company's Chief Financial Officer and its current and former independent registered public accounting firms. [Emphasis added.]

27.    On this news, shares of the Company's stock fell $0.69 per share, or 7.3 percent, to close on February 24, 2010 at $8.68 per share, on unusually heavy trading volume.

28.    Then on March 8, 2010, China North issued a press release entitled "China North East Petroleum Clarifies Non-Cash Accounting Adjustments to Previously Issued 2008 and 2009 Financial Statements."  Therein, the Company further revealed:

China North East Petroleum Holdings Ltd., a leading independent oil producing and oilfield services company in Northern China, today announced the impact of its previously announced need to revise its 2008 and 2009 financial statements to account for non-cash accounting adjustments.

As stated in the Company's 8-K filed on February, 23, 2010, the Board of Directors of the Company determined that *the Company's financial statements for the year ended December 31, 2008, and each interim quarter within that year, and for the quarters ended March 31, 2009, June 30, 2009 and September 30, 2009 should no longer be relied upon as a result of certain non-cash errors contained therein regarding the accounting for: (i) warrants issued in conjunction with certain financings in 2008 and 2009, which warrants should have been classified according to EITF-0019 as liability instruments rather than equity instruments; (ii) interest expense calculated using the effective interest method that should have been recorded in each of the reporting periods in question, arising from those certain financings in 2008 and 2009; (iii) changes in the fair value of the reclassified warrants; (iv) ceiling test impairment calculations prepared by the Company for the reporting periods ended December 31, 2008 and March 31, 2009; (v) depreciation, depletion and amortization expenses related to the company's oil and gas properties, net; (vi) recognition of employee stock-based compensation expense; and (vii) a modification of the February 28, 2009 secured debenture that occurred on March 5, 2009, which modification should have been treated as an extinguishment pursuant to EITF 96-19. Additional changes that result from these accounting changes include changes in the Company's reported income tax expense and minority interests in certain of the restated reporting periods.* The Company is preparing amended reports for the December 31, 2008 Form 10-K and 2008 and 2009 Forms 10-Q in question, including restated financial statements, and will file those amended reports with the SEC when they are completed. [Emphasis added]

29.    On April 15, 2010, China North issued a press release announcing that it would be delaying the filing of its Annual Report, for the year ended December 31, 2009, with the SEC because it was unable to prepare and review all of the necessary information and disclosures in the Annual Report by the April 15, 2010 filing deadline without incurring "unreasonable effort and expense."

30.    On this news, shares of the Company's stock fell an additional $0.75 per share, or 7.6 percent, to close on April 15, 2010 at $9.10 per share, on unusually heavy trading volume.

31.    On April 16, 2010, the Company issued another press release entitled "China North East Petroleum Holdings Ltd. Late Filing of Form 10-K Generates Standard Non-Compliance Notification from NYSE AMEX LLC; Company Provides Preliminary FY09 Financial Results."  Therein, the Company revealed additional accounting irregularities, stating in relevant part:

> As previously stated in the Forms 8-K filed by the Company with the Securities and Exchange Commission on March 8, 2010 and February 23, 2010, the Company has determined that the Company's financial statements for the year ended December 31, 2008, and each interim quarter within that year, and for the quarters ended March 31, 2009, June 30, 2009 and September 30, 2009 should no longer be relied upon and should be restated as a result of certain non- cash errors contained therein regarding the accounting for: (i) warrants issued in conjunction with a secured debenture on February 28, 2008, which warrants should have been classified according to Emerging Issues Task Force 00-19 as liability instruments rather than equity instruments; (ii) the change in the fair value of those warrants from the date of issuance through the end of the reporting period; (iii) effective interest expense arising from amortization of the discount to the carrying value of the secured debenture; (iv) the recording of warrants issued to investment consultants in connection with the secured debenture as deferred financing costs instead of consulting fees; (v) the amount of amortization of deferred financing costs associated with the issuance of that secured debenture; (vi) amounts payable to a consultant included in accrued liabilities; (vii) compensation issued to employees in the form of stock; (viii) depreciation, depletion and amortization of oil producing properties; (ix) ceiling test reduction of the net carrying value of oil producing properties; (x) income tax expense for the above items; and (xi) minority interests for certain of the above items.

*In addition, in the process of the Company's 2009 year end audit review, the Company identified certain potential internal control deficiencies over financial reporting in connection with certain expenditures relating to business development activities and the accounting treatment of certain of the Company's accounts payables.*

The Board of Directors has directed and authorized the Audit Committee of the Board of Directors to conduct a thorough review of the situation and to determine what corrective action, if any, should be taken.

*Until the completion of the review of the Company's internal control deficiencies, the Company is unable to finalize its amended and restated financial reports or its audited financial statements for the year ended December 31, 2009.* The Company is working expeditiously to complete the internal control review, and expects to file amended and restated annual and quarterly reports for the periods ending March 31, 2008, June 30, 2008, September 30, 2008, December 31, 2008, March 31, 2009, June 30, 2009 and September 30, 2009, and its Annual Report on Form 10-K for the year ended December 31, 2009 on or before June 15, 2010. The Company has engaged an external consultant with expertise in financial accounting and reporting, including specifically the additional reporting requirements affecting oil and gas producing companies, to assist with the Company's efforts to maintain effective internal controls over financial reporting. [Emphasis added]

32.    On this news, shares of the Company's stock fell an additional $0.39 per share, or 4.2 percent, to close on April 16, 2010 at $8.71 per share.

33.    On April 20, China North filed an amended Form 8-K with the SEC, which set forth further adjustments to the Company's financial statements for the fiscal year ended December 31, 2009, and for all the interim periods in 2008 and for the first three quarters of 2009.

34.    On May 25, 2010, The NYSE Alternext halted trading of China North's stock. And as of the date of the filing of this Complaint, trading of China North stock has not resumed.

35.    On May 27, 2010, China North filed a Form 8-K with the SEC which disclosed additional details of the Company's restatement.  The Form 8-K also announced the resignation of several individuals within the Company's management.  The Company stated in relevant part:

*On May 25, 2010, the Company received a written notice from NYSE AMEX LLC ("AMEX") advising that the Company is not in compliance with AMEX's continuing listing criteria* set forth in Sections 134 and 1101 of the NYSE Amex LLC Company Guide (the "Company Guide"). Specifically, AMEX noted that the Company has not timely filed its annual report on Form 10-K for the fiscal year ended December 31, 2009 and its quarterly report on Form 10-Q for the quarter ended March 31, 2010 (together, the "Reports"). In addition, AMEX stated that the Company's failure to file its Reports is a material violation of its listing agreement. Pursuant to 1003(d) of the Company Guide, *AMEX is authorized to suspend, and unless prompt corrective action is taken, remove the Company's common stock from AMEX. AMEX halted trading of the Company's common stock on the same day.*

As the Company disclosed in its current report on Form 8-K filed on April 16, 2010, AMEX required that the Company submit a plan of compliance by April 29, 2010 with the action the Company has taken, or will take, to file the 10-K for 2009 and bring the Company into compliance with the listing standards no later than July 14, 2010 (the "Plan"). As AMEX required, the Company submitted its Plan on April 29, 2010, which the Corporate Compliance Department of AMEX currently is evaluating. As stated in the current notice from AMEX, the Company may supplement its Plan until June 8, 2010. The Company intends to submit such supplement by June 8, 2010.

*The Company also previously disclosed in a press release issued on April 16, 2010 and as an exhibit to its current report on Form 8-K filed on April 16, 2010, that, in the process of the Company's 2009 year end audit review, the Company identified potential internal control deficiencies over financial reporting in connection with certain expenditures relating to business development activities and the accounting treatment of certain of the Company's accounts payables.* In response, on April 15, 2010, the Board of Directors directed and authorized the Audit Committee of the Board of Directors (the "Audit Committee") to conduct a thorough review of the situation and to determine what corrective action, if any, should be taken

On April 19, 2010, the Audit Committee retained the services of John Lees & Associates Limited of Hong Kong ("JLA") to conduct a forensic audit of the Company's bank accounts with respect to the expenditures relating to business development activities in question. *The forensic audit preliminarily found that in 2009, cash transfers occurred between the bank accounts of the Company and its subsidiaries and the personal bank accounts of Mr. Hongjun Wang, the Company's chief executive officer, and Ms. Guizhi Ju, a Company director and mother of Mr. Hongjun Wang.* The forensic audit has confirmed that some of the transferred funds were used to pay the Company's expenses. To date, there is no indication that any of the funds were used for personal purposes. *The forensic audit is ongoing.*

\*        \*        \*

After an update of the preliminary report by JLA, the Board called a special meeting to discuss the situation on May 21 and 22, 2010. As a result of these meetings, on May 23, 2010, the Board through unanimous written consent took the following corporate actions:

(i)      ***Accepted the resignation of its chief financial officer, Mr. Yang Zhang***, and appointed Mr. Andrew Kan from JLA to serve as interim acting chief financial officer until a permanent chief financial officer is duly appointed.

(ii)     ***Accepted the resignation of Ms. Ju as a director of the Company***.

(iii)    ***Accepted the resignation of Mr. Hongjun Wang as the Chairman of the Board*** but allowed him to continue as a director pending the outcome of the current forensic audit.

(iv)     Appointed the Company's independent director, Mr. Edward Rule, as Chairman of the Board.

(v)      ***Placed Mr. Hongjun Wang on administrative leave as chief executive officer*** pending the outcome of the current forensic audit.

(vi)     Appointed the Company's independent director, Mr. Jingfu Li, as the interim acting chief executive officer.

(vii)    Directed that all expenditures of the Company and its subsidiaries over US$10,000 be approved in advance by the Chairman of the Audit Committee.

The Company believes that these remedial measures will prevent further failure of the Company's financial controls and procedures and preserve the assets of the Company. As the forensic audit continues, the Company is treating this serious matter with the utmost urgency. Upon further findings of the forensic audit, the Company will continue to implement measures as the situation demands. [Emphasis added.]

### CHINA NORTH'S VIOLATION OF GAAP RULES IN ITS FINANCIAL STATEMENTS FILED WITH THE SEC

36.     These financial statements and the statements about the Company's financial

results were false and misleading, as such financial information was not prepared in conformity with GAAP, nor was the financial information a fair presentation of the Company's operations due to the Company's improper accounting for, and disclosure about its revenues, in violation of GAAP rules.

37.    GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. Regulation S-X (17 C.F.R. § 210.4 01(a) (1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. § 210.10-01(a).

38.    The fact that China North will restate its financial statements, and disclosed that these financial statements should not be relied upon is an admission that they were false and misleading when originally issued (APB No.20, ¶¶7-13; SFAS No. 154, ¶25).

39.    Given these accounting irregularities, the Company announced financial results that were in violation of GAAP and the following principles:

(a)    The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, ¶10);

(b)    The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated

(FASB Statement of Concepts No. 1, ¶34);

(c)     The principle that "financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. 1, ¶40);

(d)     The principle that "financial reporting should provide information about an enterprise's financial performance during a period" was violated (FASB Statement of Concepts No. 1, ¶42);

(e)     The principle that "financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it" was violated (FASB Statement of Concepts No. 1, ¶50);

(f)     The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, ¶¶ 58-59);

(g)     The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, ¶79); and

(h)     The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated (FASB Statement of

Concepts No. 2, ¶95).

40.     The adverse information concealed by Defendants during the Class Period and detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R. §229.303).

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased China North securities during the Class Period (the "Class").  Excluded from the Class are defendants, directors and officers of China North and their families and affiliates.

42.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  According to the Company's Form 10-K filed with the SEC on November 16, 2009, China North had over 25 million shares of stock outstanding, owned by thousands of persons.

43.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

        (a)     Whether the Securities Exchange Act was violated by defendants;

        (b)     Whether defendants omitted and/or misrepresented material facts;

        (c)     Whether defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether defendants knew or recklessly disregarded that their statements were false and misleading;

(e)     Whether the prices of China North securities were artificially inflated; and

(f)     The extent of damage sustained by Class members and the appropriate measure of damages.

44.     Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

45.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

46.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## LOSS CAUSATION/ECONOMIC LOSS

47.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class. The price of China North's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses. As a result of their purchases of China North securities during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## SCIENTER ALLEGATIONS

48.     During the Class Period, the defendants had both the motive and opportunity to commit fraud. They also had actual knowledge of the misleading nature of the statements they made or acted in reckless disregard of the true information known to them at the time. In so

doing, the defendants participated in a scheme to defraud and committed acts, practices and participated in a course of business that operated as a fraud or deceit on purchasers of China North East 's securities during the Class Period.

## Applicability of Presumption of Reliance:
### Fraud on the Market Doctrine

49.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     The omissions and misrepresentations were material;

(c)     The Company's securities traded in an efficient market;

(d)     The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(e)     Plaintiff and other members of the Class purchased China North securities between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

50.     At all relevant times, the market for China North securities was efficient for the following reasons, among others: (a) as a regulated issuer, China North filed periodic public reports with the SEC; and (b) China North regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public

disclosures, such as communications with the financial press, securities analysts and other similar reporting services.

## NO SAFE HARBOR

51.    Defendants' verbal "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

52.    The defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of China North who knew that the FLS was false.    None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

53.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54.    During the Class Period, China North and the Individual Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase China North securities at

artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, these defendants, and each of them, took the actions set forth herein.

55.    China North and the Individual Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for China North securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  These defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons.

## SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act the Individual Defendants

56.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57.    The Individual Defendants acted as controlling persons of China North within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public

filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

59.    As set forth above, China North and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of these defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages and equitable relief in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: July 9, 2010                                    Respectfully submitted,

                                                              BRODSKY & SMITH, LLC
                                                              By: *s/ Evan J. Smith, Esquire*
                                                              Evan J. Smith, Esquire
                                                              esmith@brodsky-smith.com
                                                              240 Mineola Boulevard
                                                              Mineola, NY 11501
                                                              (516) 741-4977
                                                              (516) 741-0626 (facsimile)

                                                              BARROWAY TOPAZ KESSLER
                                                              MELTZER & CHECK, LLP
                                                              D. Seamus Kaskela
                                                              skaskela@btkmc.com
                                                              David M. Promisloff
                                                              dpromisloff@btkmc.com
                                                              Steven D. Resnick
                                                              sresnick@btkmc.com
                                                              280 King of Prussia Road
                                                              Radnor, PA 19087
                                                              (610) 667-7706
                                                              (610) 667-7056 (fax)

                                                              *Attorneys for Plaintiff*

## CERTIFICATION

I, Tony Moore, ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1.  Plaintiff has reviewed the Complaint, and authorizes its filing.

2.  Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.  Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, including providing testimony at deposition and trial, if necessary.

4.  Plaintiff's purchase and sale transaction(s) in China North East Petroleum Holdings Ltd. (AMEX: NEP) security that is the subject of this action during the Class Period is/are as follows:

| Type of Security (common stock, preferred, option, or bond) | Number of Shares | Bought (B) | Sold (S) | Date | Price per share |
|---|---|---|---|---|---|
| | | | | | |
| SEE ATTACHED | | | | | |
| | | | | | |
| | | | | | |

(Please list additional purchase and sale information on a separate sheet of paper, if necessary)

5.  Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.  During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as described below: _____.

7.  Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5-7th day of July, 2010.

_____
TONY MOORE

**SCHEDULE A**

| Type of Security (common stock, preferred, option, or bond) | Number of Shares | Bought (B) | Sold (S) | Date | Price per share |
|---|---|---|---|---|---|
| Common Stock | 100 | (B) | | 1/4/2010 | $9.55 |
| Common Stock | 100 | (B) | | 1/11/2010 | $10.49 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |